**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

SAMUEL R. HILLER,       )     3:08-CV-00677-LRH (RAM)
                         )
       Plaintiff,     )
                         )    **REPORT AND RECOMMENDATION**
    vs.                )    **OF U.S. MAGISTRATE JUDGE**
                         )
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,  )
                         )
       Defendant.   )
_____)

      This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

      Plaintiff Samuel R. Hiller filed a motion for judgment on the pleadings seeking reversal of the Commissioner's decision and remand for an awarding of benefits on April 9, 2009. (Doc. #12.) Defendant Commissioner opposed the motion and filed a cross-motion for summary judgment to affirm the Commissioner's final decision on May 22, 2009. (Doc. #15, 16.) After a thorough review, the court recommends that Plaintiff's motion be denied and Defendant's motion be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      At the time of the Commissioner's final decision, Plaintiff was a sixty-four-year-old man who had completed high school, one year of college, and who had worked as an assistant treasurer/computer programmer in the banking industry for thirty-five years. (Tr. 89, 477-

1

78, 494.) Plaintiff filed an application for Disability Insurance Benefits (DIB) on January 10, 2005, (Tr. 62) asserting that chronic obstructive pulmonary disease, difficulty breathing, high blood pressure, coronary artery disease, cardiomyopathy, diverticulitis, colon resection, peripheral vascular disease, vulvular heart disease, torn ligaments in knees, arthritis, carpal tunnel syndrome, and depression caused him to be permanently and completely disabled since December 1, 2003. (Tr. 45, 62, 87-88, 474.) The Commissioner initially denied Plaintiff's claim on May 23, 2005. (Tr. 45.) On reconsideration, the Commissioner found Plaintiff disabled as of September 1, 2006, and entitled to disability benefits. (Tr. 40.0-41) On May 15, 2007, Plaintiff requested a hearing to challenge the Commissioner's determination of Plaintiff's date of disability. (Tr. 38-39).

Plaintiff, represented by counsel, appeared and testified at the disability hearing on January 10, 2008. (Tr. 472-95.) The Administrative Law Judge (ALJ) followed the five-stage procedure for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and found Plaintiff could perform his past relevant work as a computer programmer as that job is usually performed in the national economy. (Tr. 29-30.) Accordingly, in the decision issued on May 16, 2008, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. (*Id.*) Plaintiff appealed the decision, and the Appeals Council denied review. (Tr. 5-8.) Thus, the ALJ's decision became the final decision of the Commissioner. (*Id.*)

Plaintiff now appeals the ALJ's decision to the district court, in which he argues: (1) the ALJ and the Appeals Council failed to properly evaluate the medical evidence; (2) the ALJ relied upon flawed vocational expert testimony in finding that Plaintiff could perform his past relevant work; and (3) the ALJ failed to properly evaluate Plaintiff's credibility. (Doc. #12.)

## II.  STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.

2

2005)(internal quotation marks and citation omitted).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995).  "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id*. at 749. The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986); 20 C.F.R. § 404.1512(a).  To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months ...." 42 U.S.C. §423 (d)(1)(A).

### III.  DISCUSSION

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); *see* 20 C.F.R. §§ 404.1520, 416.920.  If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

In the first step, the Commissioner determines whether the claimant is engaged in "substantially gainful activity"; if so, a finding of nondisability is made and the claim is denied.  *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in substantially gainful activity, the Commissioner proceeds to step two.  20 C.F.R. §416.920(a).

/ / /

3

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520. If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner determines whether the impairment is equivalent to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 (Listed Impairments). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity. 20 C.F.R. § 416.925(a). If the claimant's impairment meets or equals a listed impairment and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment is severe, but does not meet or equal a listed impairment, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f). If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner, *Yuckert*, 482 U.S. at 144, to establish, in step five, that the claimant can perform work available in the national economy. *Id*. at 141-42; *see* 20 C.F.R. §§ 404.1520(e), 404.1520(f), 416.920(e), 416.920(f). Application of steps four and five requires the Commissioner to review the claimant's residual functional capacity and the physical and mental demands of the work he or she did in the past. 20 C.F.R. § 404.1520(f),(g). "Residual functional capacity" (RFC) is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience

to determine whether the claimant can do other work. *Id.*  If the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566.

In the present case, the ALJ applied the five-step sequential evaluation process and found, at step one, that Plaintiff was not engaged in substantially gainful activity.  (Tr. 23.) At step two, the ALJ found that the medical evidence established that Plaintiff is severely impaired by a history of coronary artery disease, a post 3 vessel coronary artery bypass grafting, a history of diverticulitis, post sigmoid colectomy and small bowel resection, and a history of chronic obstructive pulmonary disease. (Tr. 23-24.)  However, the ALJ found that Plaintiff's symptoms of peripheral arterial disease, carpal tunnel syndrome, and depression were not severe impairments.  (Tr. 24-27.)  The ALJ concluded Plaintiff's impairments did not meet or equal the level of severity of any impairments described in the Listed Impairments either individually or in combination. (Tr. 27.)  At step four, the ALJ determined Plaintiff could perform his past relevant work as a computer programmer as that job is usually performed in the national economy.  (Tr. 29-30.)

## A.    **Evaluation of Medical Evidence**

Plaintiff asserts the ALJ improperly concluded his peripheral artery disease and depression were non-severe and failed to give proper weight to the opinions of two treating physicians.  (Doc. #12.)   Plaintiff also asserts that the Appeals Council failed to properly consider new and material evidence.  (*Id.*)  Defendant argues that the issue of whether Plaintiff's peripheral artery disease is a severe impairment is moot.  Defendant contends that the ALJ properly assessed Plaintiff's depression as non-severe, properly weighed the evidence from Plaintiff's physicians, and that Plaintiff has failed to show good cause for not submitting his new evidence before the ALJ's decision. (Doc. #15.)

### 1.    Peripheral Artery Disease

Plaintiff argues that the ALJ erred at step two in finding his peripheral artery disease "not severe."  (Pl.'s Mem. In Supp. For J. on the Pleadings 16-17 (Doc. #12).)  Defendant

5

1   responds that the issue is moot because the ALJ accounted for the functional limitations
2   associated with peripheral artery disease when assessing Plaintiff's residual functional
3   capacity at step four.  (Def.'s Cross-Mot. For Summ. J. 2 (Doc. #15).)

4       "An impairment is not severe if it does not significantly limit [the claimant's] physical
5   or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Basic work activities
6   are "abilities and aptitudes necessary to do most jobs," including  "walking, standing, sitting,
7   lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and
8   speaking;  understanding,  carrying  out,  and  remembering  simple  instructions;  use  of
9   judgment; responding appropriately to supervision, co-workers and usual work situations;
10  and dealing with changes in a routine work setting."  20 C.F.R.  § 404.1521(b).  The severity
11  inquiry is "a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*,
12  80 F.3d 1273, 1290 (9th Cir. 1996)(citations omitted).  An impairment can be found "not
13  severe only if the evidence establishes a slight abnormality that has no more than a minimal
14  effect on an individual's ability to work."  *Id.* (citations omitted).  Even if the ALJ errs in
15  neglecting to list an impairment as "severe" at step two, such an error is harmless if the ALJ
16  considers the limitations posed by the impairment at step four.  *Lewis v. Astrue,* 498 F.3d
17  909, 911 (9th Cir. 2007).

18      Here, the ALJ concluded that the clinical notes from Plaintiff's treating cardiologist,
19  Dr. Gitlin, failed to show any significant functional limitations as a consequence of Plaintiff's
20  peripheral arterial disease. (Tr. 24.) The ALJ determined that Plaintiff's peripheral arterial
21  disease was not a severe impairment at step two.  (*Id.*)  In formulating Plaintiff's RFC at step
22  four, however, the ALJ found that Plaintiff was limited to standing and/or walking no more
23  than *occasionally*.  (Tr.  28).  By specifically finding this limitation, the ALJ considered,
24  albeit implicitly, Plaintiff's difficulty in standing and walking that result from his medical
25  conditions.  Thus, the court agrees with Defendant that the ALJ's finding that Plaintiff's
26  peripheral artery disease is "not severe" is moot.

27  / / /

28                                  6

2.    Depression

Plaintiff contends that the ALJ erred in disregarding evidence in the record of Plaintiff's depression and rejecting the opinion of the psychological consultive examiner, Dr. Doornink, to find that Plaintiff's depression is "not severe." (Pl.'s Mem. 18.)  Defendant asserts that the medical record contains no evidence of Plaintiff's depression and that the ALJ properly rejected Dr. Doornink's conclusions.  (Def.'s Mot. 3-4.)

Plaintiff carries the initial burden of establishing that his severe mental impairments significantly limit his ability to perform basic work activities. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).  He must provide medical evidence showing how severe his mental impairments are during the time disability is alleged. 20 C.F.R. §§ 404.1512(c), 416.912(c). As discussed above, the severity inquiry is a "de minimis screening device" where an impairment can be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)(citations omitted).

The ALJ noted that Plaintiff experienced depression and had been prescribed Zoloft, but he found that the medical records did not indicate Plaintiff "experienced significant symptoms from any mental impairment, let alone demonstrate any medical findings of depression or any other mental impairment." (Tr. 25.) Specifically, the ALJ found only one instance where Plaintiff's treating physicians indicated that Plaintiff was depressed. (Tr. 24.)

The ALJ's review of Plaintiff's medical records correctly identifies the scarcity of clinical notes made by Plaintiff's treating physicians regarding depression.  Dr. Meyers, Plaintiff's primary care physician, first noted Plaintiff's depression December 2003.  (Tr. 220.) Dr. Meyers prescribed Plaintiff Zoloft in early 2004 (Tr. 383) and increased Plaintiff's dosage in October 2005 (Tr. 206).  Dr. Gitlin, Plaintiff's treating cardiologist, noted in April 2004 that Plaintiff "saw Dr. Meyers recently and Zoloft was added." (Tr. 383.) Dr. Dalal, a cardiologist who treated Plaintiff twice in April 2006, diagnosed Plaintiff with depression (Tr. 295), but his clinical examination notes do not indicate any medical findings related to

7

1   depression (Tr. 301-06).  Aside from these few, spare notations by Plaintiff's physicians, the

2   remainder of his lengthy medical record is devoid of further, more detailed clinical findings

3   regarding his mental health.  While Plaintiff's medical records demonstrate some treatment

4   and medication for depression, those records do not establish more than a slight abnormality

5   having a minimal effect on Plaintiff's ability to work.

6        The ALJ also found that the findings in Dr. Doornink's report failed to support a

7   conclusion of limitation due to a mental condition.  (Tr. 25.)  According to the ALJ, the tests

8   administered by Dr. Doornink did not support his functional assessment that Plaintiff was

9   unable carry out detailed or complex tasks.  (*Id*.)  The ALJ rejected Dr. Doornink's functional

10  assessment and concluded that Plaintiff's medically determinable mental impairment caused

11  only a minimal limitation in his ability to perform basic mental work activities and was "not

12  severe." (Tr.  26.)

13       "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must

14  state clear and convincing reasons that are supported by substantial evidence." *Bayliss v.*

15  *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)(citing *Lester v. Chater*, 81 F.3d 821, 830-31

16  (9th Cir. 1995)).   On the other hand, "[i]f a treating or examining doctor's opinion is

17  contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and

18  legitimate reasons that are supported by substantial evidence. *Id*.

19       Here, Dr. Doornink, an examining psychologist, provided an uncontradicted opinion

20  of Plaintiff's mental health.  Thus, the ALJ must have specified clear and convincing reasons

21  for rejecting Dr. Doornink's functional assessment of Plaintiff.

22       Dr. Doornink conducted an examination of Plaintiff in December 2006 in which he

23  administered a series of tests, made specific medical findings, and diagnosed Plaintiff with

24  a mood disorder due to Plaintiff's chronic obstructive pulmonary disease. (Tr. 314-17.)  Dr.

25

26

27

28                                            8

1   Doornink assigned Plaintiff a Global Assessment of Functioning score of 65.[1]  (Tr. 317.)  In

2   a functional assessment, Dr. Doornink opined that Plaintiff "can understand, remember, and

3   carry out at least simple one and two-step tasks but probably not detailed or complex tasks

4   as he performed today." (Tr. 316.)

5          The ALJ concluded that Dr. Doornink's examination findings did not support the

6   conclusion in his functional assessment that Plaintiff could not perform complex tasks.  (Tr.

7   25.)  "An ALJ may reject an examining physician's opinion if it is contradicted by clinical

8   evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008).   The ALJ

9   pointed to specific test results evidencing Plaintiff's abilities: "[Plaintiff] was off by one day

10  on the date, but ... performed serial sevens 'flawlessly,' accurately spelled the word "World"

11  forward and backward, and performed alphanumeric counting without error."  The ALJ

12  determined that these test results, Plaintiff's GAF score of 65, and the lack of evidence from

13  Plaintiff's treating physicians showing clinical findings or treatment of depression pointed

14  toward a non-severe mental impairment.  (Tr. 26.)

15         Additionally, the ALJ supported his rejection of Dr. Doornink's functional assessment

16  by considering the four broad functional areas for evaluating mental disorders: daily living;

17  social functioning; concentration, persistence or pace; and episodes of decompensation.  20

18  C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  A mental impairment is generally considered

19  non-severe if the degree of limitation in the first three functional areas is rated as "none" or

20  "mild," and there have been no episodes of decompensation.  20 C.F.R. §§ 404.1520a(d)(1),

21  416.920a(d)(1).  First, the ALJ found that the record indicated Plaintiff suffered no

22  limitations in daily living due to his mental impairment. (Tr. 26).  Dr. Doornink's evaluation

23  and Plaintiff's testimony showed that Plaintiff "cares for his own hygiene, cooks, ... does light

24  house work ..., goes to the casino and gambles, eats out, and goes to the movies ...." (*Id.*)

25

26         [1]  The Global Assessment of Functioning (GAF) scale is a common tool for tracking and evaluating the
    overall psychological functioning of a patient.  A score of 61-70 indicates "[s]ome mild symptoms, (e.g. depressed

27  mood and mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally
    functioning pretty well...." *Diagnostic and Statistical Manual of mental Disorders* 34 (4th ed. 2000).

28
                                              9

1    Second, the ALJ evaluated Plaintiff's level of social functioning and determined that the

2    record showed no limitations due to Plaintiff's mental impairment. (*Id*.) The ALJ noted that

3    Dr. Doornink's evaluation indicated that Plaintiff "has friends and goes out to the movies with

4    those friends.  He attends church ... [and is] able to interact with the public, supervisors and

5    coworkers, displaying excellent social skills in the examination setting." (*Id*.)

6         In evaluating the third functional area – concentration, persistence or pace – the ALJ

7    determined that the "greater weight of the evidence shows that the claimant has no limitation

8    of function in this area due to his mental impairment." (*Id*.)  Specifically, the ALJ relied on

9    the concentration test results administered during Dr. Doornink's evaluation and the absence

10   of medical findings in the medical records supporting limitations based on Plaintiff's mental

11   impairment.  (*Id*.)  Plaintiff argues that the ALJ ignored Dr. Doornink's abnormal findings

12   of feelings of detachment, inability to name the date, and mild to moderate short-term

13   memory limitations. (Pl.'s Mem. 18.) However, Dr. Doornink's evaluation specifically states

14   that Plaintiff "does not have current feelings of detachment." (Tr. 315.)  Moreover, even

15   though Plaintiff was "off by one day on the date of the month," he was correctly "oriented to

16   the month and the year." (*Id*.)  In terms of Plaintiff's degree of limitation in this area, Dr.

17   Doornink determined that Plaintiff's concentration and short-term memory "appear to have

18   mild to moderate limitations." (*Id*.)  Plaintiff is correct that the ALJ did not specifically

19   address this finding.  As discussed previously, a mental impairment is generally considered

20   non-severe if the degree of limitation in the first three functional areas is rated as "none" or

21   "mild," and there have been no episodes of decompensation.  20 C.F.R. §§ 404.1520a(d)(1),

22   416.920a(d)(1).  In this case, Dr. Doornink found Plaintiff to have "mild to moderate"

23   memory limitations.  This slight degree of elevation in limitation, when taken in the context

24   of Plaintiff's medical record as a whole, is not by itself sufficient to establish a severe mental

25   impairment.  Nor is the ALJ's failure to specifically address this point enough to erode the

26   other substantial evidence upon which the ALJ based his decision.

27

28                                          10

1    Lastly, the ALJ determined that the record shows that Plaintiff experienced no

2    episodes of decompensation. (Tr. 26.)

3    Based on the lack of medical findings in Plaintiff's medical record regarding depression

4    and the inconsistency between Dr. Doornink's findings and functional assessment, the ALJ

5    determined that Plaintiff's medically determinable mental impairment causes no limitation

6    in any of the four functional areas. The ALJ thoroughly discussed the evidence in the record

7    supporting his conclusion. Accordingly, under these facts, the ALJ gave clear and convincing

8    reasons for discrediting Dr. Doornink's opinion. Thus, the ALJ's conclusion that Plaintiff's

9    depression is "not severe" is supported by substantial evidence.

10       3.    Medical Opinion Weight

11    Plaintiff argues the ALJ failed to follow the treating physician rule as to cardiologists

12    Dr. Gitlin and Dr. Dalal. (Pl.'s Mem. 19.)  Defendant argues that the ALJ properly weighed

13    the evidence from the two doctors. (Def.'s Mot. 5.)

14    In regard to Dr. Gitlin, Plaintiff argues that the ALJ failed to inquire as to Dr. Gitlin's

15    opinion on Plaintiff's disability status or his residual functional capacity. (Pl.'s Mem. 20.)

16    According to Plaintiff, the ALJ could not infer from Dr. Gitlin's raw medical records that the

17    findings were consistent with a sedentary capacity. (*Id*.)

18    The claimant bears the burden of proving disability through medical or other evidence.

19    20 C.F.R. § 404.1512(a); *see* 42 U.S.C. § 423(d)(5).  "An ALJ's duty to develop the record

20    further is triggered only when there is ambiguous evidence or when the record is inadequate

21    to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60

22    (9th Cir. 2001). Here, Plaintiff supplied extensive medical records from Dr. Gitlin. (Tr. 233-

23    94.) Within the records, Dr. Gitlin provided findings as to Plaintiff's general state of well-

24    being and activity level. (*See e.g.* Tr. 233, 235, 243, 259.) The evidence from Dr. Gitlin was

25    neither ambiguous nor inadequate and was detailed enough to allow for sufficient evaluation.

26    Thus, the ALJ did not have a duty to further develop the record.

27

28       11

1    In regard to Dr. Dalal, Plaintiff argues that the ALJ erred in giving no weight to Dr.

2    Dalal's opinion and giving the greatest weight to the opinion of examining physician, Dr.

3    Gerson, and the opinions of the non-examining physicians.  (Pl.'s Mem. 20).  Defendant

4    argues that the ALJ properly rejected Dr. Dalal's opinion with specific and legitimate reasons.

5    (Def.'s Mot. 6).

6    A physician qualifies as a treating physician if the claimant receives medical treatment

7    or evaluation and maintains "an ongoing treatment relationship" with the physician.  20

8    C.F.R. § 404.1502.  "[A]n ongoing treatment relationship" exists when the claimant sees the

9    physician "with a frequency consistent with accepted medical practice for the type of

10   treatment … required for [the] medical condition."  *Id*.  A physician seen infrequently can be

11   a treating physician "if the nature and frequency of the treatment or evaluation is typical for

12   [the] condition."  *Id*.  "It is not necessary, or even practical, to draw a bright line

13   distinguishing a treating physician from a non-treating physician. Rather, the relationship

14   is better viewed as a series of points on a continuum reflecting the duration of the treatment

15   relationship and the frequency and nature of the contact." *Benton ex rel. Benton v. Barnhart*,

16   331 F.3d 1030, 1038 (9th Cir. 2003) (quoting *Ratto v. Sec'y, Dep't of Health & Human*

17   *Servs.*, 839 F. Supp. 1415, 1425 (D. Or. 1993)).  The justification for according treating

18   physicians deference is that they have a "greater opportunity to observe and know the

19   patient." *Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994) (quoting *Murray v.*

20   *Heckler*, 722 F.2d 49, 502 (9th Cir. 1993).  Treating physicians are likely to be able "to

21   provide a detailed, longitudinal picture of [a claimaint's] medical impairment(s) and may

22   bring a unique perspective to the medical evidence that cannot be obtained from the objective

23   medical findings alone or from reports of individual examinations."  20 C.F.R. §

24   404.1527(d)(2).

25   In *Ghokassian*, the court found that a physician who saw the claimant twice in the

26   fourteen-month period immediately preceding the hearing, and who was the only physician

27   to treat the claimant during that time period, was considered the treating physician. 41 F.3d

28                                              12

at 1303. Significantly, the physician prescribed drugs for the claimant, and the claimant listed the physician as his "treating physician." *Id*. The court also noted that the physician was the doctor with the most extensive contact with the claimant. *Id*.

In *Moore*, on the other hand, the court found that a physician who saw the claimant four times within eight months was not considered a treating physician. *Moore v. Astrue*, No. C 07-1218 PJH, 2008 U.S. Dist. LEXIS 55679, at *14 ; 2008 WL 2811983, at *4 (N.D. Cal. July 21, 2008). In reaching its conclusion, the court reasoned that the claimant had "failed to present evidence that the nature and frequency of these contacts are typical for his condition." *Id*. Although the court recognized that the claimant's argument was "not entirely baseless," it concluded that the evidence was susceptible to more than one rational interpretation, and that it was rational for the ALJ to find that the nature and frequency of the physician's contacts were insufficient to qualify her as a treating physician. *Id*.

Here, Plaintiff saw cardiologist Dr. Dalal, at most, on three occasions in 2006 – April 11, April 13, and November 28.[2] (Tr. 301, 303, 463.) Plaintiff's hearing before the ALJ occurred in January 2008. (Tr. 21). Thus, Plaintiff visited Dr. Dalal three times in the twenty-one months before his hearing with his most recent November 2006 visit occurring fourteen months before the hearing. Like the claimant in *Ghokassian*, Plaintiff saw Dr. Dalal several times before his hearing, and Dr. Dalal prescribed medications. (Tr. 302, 304.) However, unlike the claimant in *Ghokassian*, Plaintiff did not see Dr. Dalal in the fourteen months preceding his hearing, nor was Dr. Dalal the doctor with the most extensive contact with Plaintiff. Dr. Gitlin, a cardiologist, treated Plaintiff from August 2002 to September 2007 with visits every few months. (Tr. 233-265.) Dr. Meyers, a primary care physician, treated Plaintiff from August 2002 to October 2005 with visits at least every two to three months. (Tr. 206-229.)

---

[2] Following his hearing before the ALJ, Plaintiff submitted additional evidence to the Appeals Council, including a multiple impairment questionnaire from Dr. Dalal dated August 5, 2008, that listed Plaintiff's last visit as November 28, 2006. The status of this evidence will be discussed in detail in Part III.A.4. However, for purposes of argument, the November visit is considered here.

1       The ALJ properly concluded that Dr. Dalal is not Plaintiff's treating cardiologist. After

2   assessing the evidence, the ALJ concluded that Dr. Dalal did not maintain a treating

3   relationship with Plaintiff after April 2006. (Tr. 29.) The ALJ determined that Dr. Dalal

4   merely examined Plaintiff in April 2006 while Plaintiff was on vacation in New York and that

5   Dr. Dalal is not Plaintiff's regular treating cardiologist. (*Id.*) Like the claimant in *Moore*,

6   Plaintiff has failed to present evidence that the nature and frequency of his contacts with Dr.

7   Dalal are typical for his condition. Although Dr. Dalal treated Plaintiff several times and

8   prescribed medication, Dr. Dalal examined Plaintiff with far less frequency than Dr. Gitlin

9   and did not examine Plaintiff within fourteen months of his hearing. "Where evidence is

10  susceptible of more than one rational interpretation, it is the ALJ's conclusion which must

11  be upheld." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Here, it was rational

12  for the ALJ to conclude that Dr. Dalal was not Plaintiff's treating cardiologist.

13      Even if the ALJ had found Dr. Dalal to be a treating physician, he properly rejected Dr.

14  Dalal's opinion. The contradicted opinion of a treating physician can only be rejected for

15  "specific and legitimate reasons" supported by substantial evidence in the record. *Bayliss v.*

16  *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)(citing *Lester v. Chater*, 81 F.3d 821, 830-31

17  (9th Cir. 1995)). The ALJ can "meet this burden by setting out a detailed and thorough

18  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

19  making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1991) (citation and

20  quotation omitted). "If a treating physician's opinion is not given controlling weight because

21  it is not well-supported or because it is inconsistent with other substantial evidence in the

22  record, [the ALJ] considers specified factors in determining the weight it will be given." *Orn*

23  *v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The factors to be considered by the ALJ in

24  determining the weight to give a medical opinion include: the "[l]ength of the treatment

25  relationship and the frequency of examination" by the treating physician; and the "nature and

26  extent of the treatment relationship" between the patient and the treating physician. 20

27  C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii); *Orn,* 495 F.3d at 631. However, the

28  14

ALJ need not accept the opinion of any medical source, including a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

The ALJ properly rejected Dr. Dalal's opinion with specific and legitimate reasons. The ALJ found that Dr. Dalal's medical source statement dated July 31, 2006, indicated a restrictive residual functional capacity based solely on Dr. Dalal's examinations of Plaintiff in April 2006 when Plaintiff developed symptoms while on vacation. (Tr. 29). In the assessment dated July 31, 2006, Dr. Dalal indicated Plaintiff had a fair prognosis; could sit up to one hour in an eight-hour workday and stand/walk up to one hour in an eight-hour workday; could lift up to five pounds occasionally, but never lift over five pounds; could carry up to five pounds occasionally, but never carry more than five pounds; and that Plaintiff was incapable of even low stress. (Tr. 295-300.) The ALJ found this opinion inconsistent with the remainder of the medical opinion evidence including opinions from Dr. Gerson, an examining physician, and the state agency review physician. (Tr. 29.) Dr. Gerson examined Plaintiff on December 6, 2006, and indicated Plaintiff could lift and/or carry ten pounds frequently and twenty pounds occasionally; could stand and/or walk up to four hours in an eight-hour workday; and could sit for six hours in an eight-hour workday. (Tr. 307-13.) Dr. Gerson acknowledged that none of Plaintiff's medical records were included for his review. (Tr. 307.) The state agency reviewing physician, Dr. Karelitz, rendered an opinion substantially similar to Dr. Gerson's. (Tr. 326-33.) The opinion of an examining physician who has not reviewed a claimant's medical records and the opinion of a non-examining physician may not, by themselves, amount to substantial evidence supporting the rejection of a treating physician's opinion. *See Orn*, 495 F.3d at 633 (examining physician's opinion amounts to substantial evidence only when it is based on either diagnoses that differ from those offered by another physician that are supported by substantial evidence or findings based on objective medical tests that the treating physician has not considered); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)(a non-examining expert's contrary

15

1    opinion alone is insufficient but may constitute substantial evidence when consistent with

2    other evidence in the record).  However, the ALJ further supported his opinion by relying on

3    Dr. Gitlin's independent clinical findings in rejecting Dr. Dalal's opinion.  (Tr. 29.)  The ALJ

4    meticulously detailed Dr. Gitlin's notes, including:  Plaintiff's ability to walk or bike three

5    times a week in March 2006;  Plaintiff's indication that he felt well and was exercising in the

6    gym three times a week without symptoms in January 2007; and Plaintiff reporting he feels

7    "wonderful" and complains of no chest pain, shortness of breath, palpitations, vertigo,

8    syncope, and orthopnea in September 2007.  (Tr. 28.)  The ALJ properly set out a detailed

9    and thorough summary of the facts and conflicting medical evidence.  After considering the

10   short duration of Plaintiff's treatment with Dr. Dalal, the ALJ rejected his opinion with

11   specific and legitimate reasons supported by substantial evidence.

12              4.    New and Material Evidence

13   After a hearing held by the ALJ, Plaintiff submitted additional evidence to the Appeals

14   Council.  (Tr. 6.)  The additional evidence consists of medical source questionnaires from Dr.

15   Roth, dated July 10, 2008, and Dr. Dalal, dated August 5, 2008.  (Tr. 438-46, 454-70.)  The

16   Appeals Council examined the additional evidence but ultimately denied review.  (Tr. 6.)

17   Plaintiff argues  that the evidence is new and material and that the Appeals Council erred in

18   rejecting the evidence.  (Pl.'s Mem. 22-23.)  Defendant argues that Plaintiff failed to show

19   good cause for submitting the additional evidence after the ALJ made his decision and that

20   the new evidence would not have changed the outcome of the case.  (Def.'s Mot. 6.)

21   To justify remand in light of new and material evidence, a plaintiff must show that

22   there is:   (1) new evidence that is material, and (2) good cause for having failed to provide

23   that evidence earlier.  *Mayes v. Massanri*, 276 F.3d 453, 462 (9th Cir. 2001); *see* 42 U.S.C.

24   § 405(g).   To meet the materiality standard, the "new or additional evidence offered must

25   bear directly and substantially on the matter in dispute."  *Mayes*, 276 F.3d at 462 (quoting

26   *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)).  A plaintiff must also demonstrate

27

28                                                 16

1   that there is a "reasonable possibility that the new evidence would have changed the outcome

2   of the administrative hearing." *Id.* (citation and quotation omitted).

3       As an initial matter, Plaintiff argues that the Appeals Council "acknowledged that the

4   [additional] evidence satisfied the requirements of new and material evidence," but

5   nevertheless "erred in rejecting the evidence." (Pl.'s Mem. 22.) On the contrary, in its "Notice

6   of Appeals Council Action," the Appeals Council merely stated, in pertinent part:

7           Under our rules, we will review your case for any of the
            following reasons:
8           ....

9           We receive new and material evidence and the decision is
            contrary to the weight of all the evidence now in the record.

10  (Tr. 5.) By determining Plaintiff's additional "information does not provide a basis for

11  changing the Administrative Law Judge's decision," the Appeals Council implicitly concluded

12  that either (1) Plaintiff's evidence was not new and material, or (2) even if Plaintiff's evidence

13  was new and material, the ALJ's decision was not contrary to the weight of all the evidence

14  now in the record. (*Id.* at 5.) Regardless, at no point did the Appeals Council explicitly

15  determine that Plaintiff's additional evidence is new and material.

16      Assuming without deciding that Plaintiff's additional evidence is new and material,

17  Plaintiff does not present good cause for having failed to present the evidence earlier or that

18  there is a reasonable possibility that the additional evidence would have changed the outcome

19  of the administrative hearing. "A claimant does not meet the good cause requirement by

20  merely obtaining a more favorable report once his or her claim has been denied. To

21  demonstrate good cause, the claimant must demonstrate that the new evidence was

22  unavailable earlier." *Mayes*, 276 F.3d at 463. Plaintiff obtained a medical source

23  questionnaire from Dr. Roth dated July 10, 2008, that he submitted to the Appeals Council

24  on August 4, 2008. (Tr. 438-46.) Dr. Gitlin's clinical notes dated May 28, 2007, state that

25  Plaintiff was changing primary physicians from Dr. Meyers to Dr. Roth. (Tr. 336.) Despite

26  the seven intervening months between the date of Dr. Gitlin's note and the hearing held by

27

28                                                  17

the ALJ on January 10, 2008, Plaintiff failed to make a visit to Dr. Roth. In fact, Plaintiff did not see Dr. Roth until July 10, 2008 – almost two months after the ALJ issued his decision on May 16, 2008.[3] (Tr. 30, 439.) Accordingly, Plaintiff has failed to show good cause that a medical source questionnaire from Dr. Roth was unavailable before the January 2008 hearing.

Plaintiff also obtained a medical source questionnaire from Dr. Dalal dated August 5, 2008, that he submitted to the Appeals Council on September 3, 2008. (Tr. 454, 463-70.) The medical source questionnaire indicates that Dr. Dalal's most recent examination of Plaintiff was November 28, 2006. (Tr. 463.) Just as with Dr. Roth, Plaintiff had ample time to obtain the medical source questionnaire from Dr. Dalal before the hearing on January 10, 2008. Plaintiff makes much of his visit to Dr. Dalal in November 2006 (Pl.'s Mem. 22), but as the court has previously noted, even considering this visit, Dr. Dalal does not qualify as Plaintiff's treating cardiologist, and the ALJ properly rejected his opinion. Thus, Plaintiff has not demonstrated a reasonable possibility that this new evidence would have changed the outcome of the administrative proceeding.

**B.    <u>Vocational Expert Testimony</u>**

Plaintiff next argues that the vocational expert (VE) improperly described Plaintiff's past position as a computer programmer as it is generally performed in the national economy, and that the ALJ should have proceeded to step five of the disability process. (Pl. Mem. 24-25.) Plaintiff contends that because his skills are limited to the banking industry and he lacks a college degree, the ALJ failed to show that there are substantial jobs he can perform. (*Id.* at 25.) Defendant responds that the vocational expert provided substantial evidence that Plaintiff could perform his past work as generally performed. (Def.'s Mot. 9.) Defendant

---

[3] Plaintiff''s testimony indicates he may have seen Dr. Roth earlier than July 10, 2008, during the six months before the hearing. (Tr. 482.) If so, Plaintiff's failure to obtain the medical source questionnaire during one of these visits further detracts from his ability show that his information was unavailable.

asserts that it was unnecessary for the ALJ to proceed to step five because he determined that Plaintiff could do his past work. (*Id*. at 11.)

A claimant is not disabled if he can perform his past relevant work, either as he actually performed it or as generally performed in the national economy. 20 C.F.R. § 404.1560. The claimant bears the burden of showing that he does not have the RFC to engage in his past relevant work. *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001) (citations and quotations omitted). Specifically, the claimant must prove "an inability to return to his former *type* of work and not just to his former job." *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986) (emphasis in original). Even though "the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari,* 249 F.3d 840, 844 (9th Cir. 2001). "To determine whether a claimant has the [RFC] to perform his past relevant work, the [ALJ] must ascertain the demands of the claimant's former work and then compare the demands with his present capacity." *Villa*, 797 F.2d at 798.

"[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto,* 249 F.3d at 845. The ALJ may rely on the general job categories contained in the Dictionary of Occupational Titles (DOT) as presumptively applicable to a claimant's prior work. *Villa*, 797 F.2d at 798; *see Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). However, a claimant may overcome the presumption that a DOT job title applies to him "by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." *Villa*, 797 F.2d at 798.

In the present case, the ALJ determined that Plaintiff is capable of performing his past relevant work as a computer programmer[4] as that job is usually performed in the national economy. (Tr. 29-30.) Despite the greater lifting that Plaintiff's specific job had required and

---

[4] *See* Dictionary of Occupational Titles Job Number 030.162-010, *available at* 1991 WL 646542.

19

that a college degree is usually required to obtain a job as a computer programmer, the ALJ relied on the VE's testimony that Plaintiff's past relevant work was properly classified as computer programmer. (Tr. 30.) The ALJ concluded that Plaintiff's RFC, which allows him to perform the full range of sedentary work and to perform skilled work (Tr. 27), would enable Plaintiff to perform his past relevant work as a computer programmer because it is usually performed as sedentary, skilled work in the national economy (Tr. 29-30).

Plaintiff points, in part, to the discrepancy in lifting requirements between his specific past work and the description of computer programmer in the DOT to argue that his past work was erroneously classified as computer programmer. (Pl. Mem. 24.) Plaintiff's past work required him to lift up to fifty pounds and to frequently lift twenty-five pounds. (Tr. 493.) Sedentary work, however, limits lifting to no more than ten pounds. 20 C.F.R. § 404.1567(a). Plaintiff asserts that "it is unclear what part of [Plaintiff's] day was spent performing computer programming, and what part was spent performing other duties, such as moving computers and bulk computer paper ..." (Pl. Mem. 24.) According to Social Security Ruling 82-61:

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

1982 SSR LEXIS 31, at *4; 1982 WL 31387, at *2. Thus, based on the VE's testimony that a job as a computer programmer as generally performed in the national economy requires only a sedentary exertion level and the corresponding description for computer programmer in the DOT, the ALJ properly concluded that Plaintiff's RFC allowed him to perform his past work. Accordingly, the ALJ was not required to proceed to step five. *See Schneider v. Comm'r of Soc. Sec.*, 223 F.3d 968, 974 (9th Cir. 2000).

20

1     Plaintiff also argues that the ALJ failed to properly consider Plaintiff's lack of a college

2   degree, failed to properly consider the VE's testimony that his skills would be limited to the

3   banking field, and failed to show evidence of a significant number of jobs in the economy

4   Plaintiff could perform. (Pl.'s Mem. 24-25.) In determining whether a claimant can perform

5   his past work, the ALJ "will not consider [a claimant's] vocational factors of age, education,

6   and work experience or whether [a claimant's] past relevant work exists in significant

7   numbers in the national economy." 20 C.F.R. § 404.1560(b)(3).  Plaintiff lists vocational

8   factors considered at step five. 20 C.F.R. § 404.1560(c). Because the ALJ concluded Plaintiff

9   could perform his past work at step four, the ALJ was not required to consider the step-five

10  vocational factors.

11  **C.   <u>Plaintiff's Credibility</u>**

12     Lastly, Plaintiff argues that the ALJ failed to properly evaluate his credibility.  (Pl.'s

13  Mem. 27.)  Plaintiff asserts that the ALJ did not make required findings and that the ALJ's

14  decision lacked specific reasons for the credibility finding.  (*Id.* at 28.)  Defendant contends

15  that the ALJ provided sufficient rational for discounting Plaintiff's subjective claims. (Def.'s

16  Mot. 11.)  Defendant argues that the ALJ provided specific, clear, and convincing reasons for

17  rejecting Plaintiff's allegations of subjectively disabling symptoms and that the ALJ properly

18  considered the relevant credibility factors.  (*Id.* at 12.)

19     A claimant's credibility becomes important at the stage where the ALJ assesses the

20  claimant's RFC. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). Subjective

21  symptom testimony may tell of greater limitations than medical evidence alone. *Id.* Thus, a

22  claimant's credibility is often crucial to a finding of disability. *Id.* (citing Social Security Rule

23  96-7p (1996)).

24     In general, when deciding whether to accept or reject a claimant's subjective symptom

25  testimony, an ALJ must perform two stages of analysis: an analysis under *Cotton v.*

26  *Bowen*,799 F.2d 1403 (9th Cir. 1986) (the "*Cotton* test"), and an analysis of the credibility of

27

28                                   21

the claimant's testimony regarding the severity of his or her symptoms. *Smolen*, 80 F.3d at 1281; *see also* 20 C.F.R. § 404.1529 (adopting two-part test). "If the claimant produces evidence to meet the *Cotton* test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms only by offering specific, clear, and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Bunnell v. Sullivan*, 947 F.2d 341,344 (9th Cir. 1991)(en banc). This test "imposes only two requirements on the claimant: (1) [he or] she must produce objective medical evidence of an impairment or impairments; and (2) [he or] she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (emphasis in original); *see also* 20 C.F.R. § 404.1529(a)-(b).

An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's [symptom] testimony.'" *Bunnell*, 947 F.2d at 345-346 (quoting *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991)). When analyzing credibility an ALJ may properly consider medical evidence in the analysis. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2003)(holding ALJ properly determined credibility where claimant's testimony was contradictory to and unsupported by objective medical evidence). An ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency and intensity of pain or other symptoms;

22

1    precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any

2    medication taken to alleviate symptoms; treatment, other than medication, received for relief

3    of symptoms; any measures a claimant has used to relieve symptoms; and other factors

4    concerning functional limitations and restrictions due to symptoms.    20 C.F.R. §

5    404.1529(3)(i)-(vii).

6         Here, there is no dispute that Plaintiff produced objective evidence in the record of

7    impairments to his lungs, colon, heart, circulatory system, and mental health, which could

8    have given rise to Plaintiff's symptoms and functional limitations.  As a result, the ALJ was

9    required to make credibility findings as to Plaintiff's own testimony.  Because there is no

10   evidence of malingering, the ALJ was required to give clear and convincing reasons in support

11   of his adverse credibility finding.

12        The ALJ found that Plaintiff's allegations of symptoms precluding his performing the

13   activities described in the RFC were "disproportionate to the objective findings of the medical

14   record, inconsistent with the reliable medical opinion evidence, exaggerated, and not fully

15   credible." (Tr. 28.)  After evaluating Dr. Gitlin's treatment notes, the ALJ concluded that

16   Plaintiff had not experienced significant cardiac related symptoms on a regular basis.  (*Id*.)

17   The ALJ specifically found that Plaintiff's testimony at the hearing that he needed to rest after

18   five minutes of activity when performing household activities contradicted Dr. Gitlin's clinical

19   notes.  (Tr. 29.)

20        The ALJ properly provided specific, clear, and convincing reasons supported by

21   substantial evidence for making an adverse credibility determination.  While a claimant is not

22   required to provide objective medical evidence affirmatively proving the severity of his

23   symptoms, an ALJ may reject a claimant's statements about the severity of his symptoms if

24   those statements are inconsistent with or contradicted by objective medical evidence. *Bunnell*

25   *v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); see *Johnson v. Shalala*, 60 F.3d 1428, 1434

26   (9th Cir. 1995).  In making the credibility determination, the ALJ permissibly relied on the

27   opinion of Dr. Gerson, an examining physician, and clinical notes of Dr. Gitlin, Plaintiff's

28                                            23

treating cardiologist. (Tr. 28.) The ALJ found that the medical evidence supported Plaintiff having the functional capacity to lift and carry a maximum of twenty pounds, to frequently lift and carry ten pounds, to occasionally stand and/or walk for up to four hours in an eight-hour workday, to sit for about six hours in an eight-hour workday, and to push and or pull in an unlimited manner within the lifting and carrying limitations. (Tr. 27-28.) At the hearing, Plaintiff testified that when housecleaning he needed to rest after five minutes. (Tr. 487.) Similarly, Plaintiff testified that when cleaning up after his dog he would have to rest after five or ten minutes. (*Id*.)

The ALJ detailed Dr. Gitlin's clinical notes describing the existence of chest pain and Plaintiff's activity level. (Tr. 28.) For instance, the ALJ pointed to Dr. Gitlin's notes indicating in May 2005 Plaintiff had no chest pain or shortness of breath and was working out three times a week at the gym without symptoms; in May 2006 Plaintiff reported only occasional brief chest pain and was walking and biking without symptoms; in July 2006 and January 2007 Plaintiff had no chest pain or cardiac symptoms; and in May and September of 2007 Plaintiff had no complaints of chest pain, shortness of breath, or other symptoms. (*Id*.) The ALJ properly rejected Plaintiff's statements that household activities required him to rest after five to ten minutes as inconsistent with Dr. Gitlin's notes indicating that Plaintiff could engage in athletic pursuits without any symptoms at all. While Plaintiff correctly points to several instances where he reported chest pain (Tr. 235, 362, 375, 377, 379), one of those notes describes his chest pain as "brief" and the others indicate that he was not experiencing shortness of breath or pain when walking. (*Id*.) Even though these notes establish Plaintiff's chest pain, they contradict Plaintiff's testimony on the impact of the pain on his activity level. In sum, the vast majority of Dr. Gitlin's clinical notes contradict Plaintiff's testimony. The ALJ properly supported and adequately explained his adverse credibility determination. The finding is supported by specific, clear, and convincing reasons.

/ / /

/ / /

24

1

## IV.  CONCLUSION

2      After carefully reviewing the record as a whole, the district court should find there is

3 substantial evidence to support the ALJ's determination.

4                            **RECOMMENDATION**

5      **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Judgment on the

6 Pleadings (Doc. #12) be **DENIED**.

7          **IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion For Summary

8 Judgment (Doc. #15) be **GRANTED** and that decision of the ALJ be **AFFIRMED**.

9      DATED:   October 27, 2009.

10

11                                  _____

12                                  UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                  25